**EXHIBIT G**

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

| SOUTHERN | DISTRICT OF | NEW YORK |

VENTURA FOODS, LLC,

        Plaintiff,

V.

NICE BLENDS CORPORATION

        Defendant.

*JUDGE JONES*

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

## 02 CV 4519

TO: (Name and address of defendant)

NICE BLENDS CORPORATION
4 Park Avenue
New York, New York 10016

and/or:
21 John Bean Court
Port Washington, New York  11050

and/or:  79 Hempstead Gardens Drive
West Hempstead, New York  11552

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Susan J. Kohlmann
PILLSBURY WINTHROP LLP
One Battery Park Plaza
New York, New York  10004-1490
Tel. 212.858.1000

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

JAMES M. PARKISON

CLERK

*Melanie L. Lopez*

(BY) DEPUTY CLERK

JUN 1 4 2002

DATE

### JUDGE JONES

PILLSBURY WINTHROP LLP
One Battery Park Plaza
New York, NY 10004-1490
(212) 858-1000
Susan J. Kohlmann (SK-1855)

Attorneys for Plaintiff
VENTURA FOODS, LLC

**02 CV 4519**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



VENTURA FOODS, LLC,

               Plaintiff,

vs.

NICE BLENDS CORPORATION,

               Defendant.

_____ Civ._____ (   )

COMPLAINT

JURY TRIAL DEMANDED

RECEIVED
JUN 14 2002
U.S.D.C. S.D. N.Y.
CASHIERS

    Plaintiff VENTURA FOODS, LLC (hereafter "Ventura Foods"), as and for its complaint, alleges as follows:

### NATURE OF THE ACTION

    This is an action by Ventura Foods against Nice Blends Corporation ("Defendant") for federal trademark and trade dress infringement, federal false designation of origin, federal trade dress infringement, federal dilution, state trademark infringement, state dilution, state false advertising, state unfair competition, state interference with business, and state deceptive or misleading use of name.

## PARTIES

1.    Ventura Foods is a Delaware limited liability company having a place of business at 4840 E. Don Julian Road, City of Industry, California 91746.

2.    Upon information and belief, Defendant Nice Blends Corporation (hereafter "Defendant") is a New York corporation having a place of business at 21 John Bean Court, Port Washington, New York 11050. It is also believed that Defendant may have additional places of business at: 4 Park Avenue, New York, New York 10016; and/or 79 Hempstead Gardens Drive, West Hempstead, New York 11552.

## JURISDICTION AND VENUE

3.    This action arises under 15 U.S.C. §§ 1051 et seq. and asserts related claims of trademark infringement, false designation of origin, trade dress infringement, dilution and pendent state claims as set forth more fully herein.

4.    This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1338 and the pendent jurisdiction of the Court.

5.    This Court has personal jurisdiction over Defendant because Defendant was incorporated, and does business, in the State of New York.

6.    Venue lies in this district pursuant to 28 U.S.C. § 1391.

## DEMAND FOR JURY TRIAL

7.    Ventura Foods hereby demands a jury trial.

## FACTUAL BACKGROUND

Ventura and Its MEL-FRY® Product

8.    Plaintiff Ventura Foods is in the business of producing and selling a variety of food products, including shortenings, and oils.

9.    Beginning long prior to the acts complained of herein, Ventura Foods, through itself and its predecessors, has produced and sold vegetable-based liquid shortening in connection with the trademark MEL-FRY® (the "MEL-FRY® Mark"). Ventura Foods' MEL-FRY® product is sold in interstate commerce, and in this judicial district, to restaurants and other food service providers for use in frying foods.

10.    Ventura Foods owns a United States Patent and Trademark Office trademark registration for the MEL-FRY® Mark for vegetable shortening marketed in bulk quantities (Registration No. 0774679). This registration issued on August 4, 1964 and is incontestable.

11.    Ventura Foods' MEL-FRY® product is packaged in non-functional yellow plastic containers which bear the MEL-FRY® Mark and, together with the colors, color arrangement, logotype, and other design features of the label, overall convey a distinctive appearance (the "MEL-FRY® Trade Dress"). The MEL-FRY® Mark and MEL-FRY® Trade Dress are used as shown in Exhibit A, attached hereto.

12.    Long prior to the acts of Defendant complained of herein, Ventura Foods' MEL-FRY® Mark and MEL-FRY® Trade Dress became famous and distinctive of the MEL-FRY® product.

Defendant's Sale of Infringing MY-FRY Product

13.    Defendant produces and sells vegetable-based liquid shortening in commerce, and in this judicial district, using the trademark MY-FRY.

Defendant's MY-FRY product is sold to restaurants and other food service providers for use in frying foods.

14.    Defendant packages its MY-FRY product in non-functional yellow plastic containers, which, together with the colors, color arrangement, logotype, and other design features of the label, bear the trademark MY-FRY, as shown in Exhibit B, attached hereto.

15.    Defendant's MY-FRY trademark and trade dress intentionally and willfully copies and mimics Ventura Foods' MEL-FRY® trademark and trade dress, and is likely to cause confusion, mistake, or deception regarding the origin, affiliation, or relationship of Defendant's MY-FRY product with Ventura Foods and its MEL-FRY® product.

16.    On information and belief, Defendant has specifically targeted existing and prospective customers of Ventura Foods' MEL-FRY® product in an effort to confuse or deceive such customers into believing that Defendant's MY-FRY product originates with, is affiliated with, or is related to Ventura Foods and its MEL-FRY® product.

17.    On information and belief, Defendant has intentionally marketed and sold its MY-FRY product in the primary geographic sales and distribution areas for Ventura Foods' MEL-FRY® product. Such actions demonstrate Defendant's intentional efforts to confuse or deceive customers into believing that Defendant's MY-FRY product originates with, is affiliated with, or is related to Ventura Foods and its MEL-FRY® product.

18.    Defendant's use of the MY-FRY trademark and trade dress is without Ventura Foods' consent and constitutes a use in commerce by Nice Blends of a reproduction, copy, and/or colorable imitation of Ventura Foods' MEL-FRY® Mark and MEL-FRY® Trade Dress. Defendant has willfully continued its deceptive business practices and bad faith use of Ventura Foods'

MEL-FRY® Mark and MEL-FRY® Trade Dress despite notice and warning from Ventura Foods.

19.   Defendant's unauthorized and wrongful use of the MEL-FRY® Mark and MEL-FRY® Trade Dress has damaged Ventura Foods; has caused a likelihood of consumer confusion, mistake, or deception; and has caused dilution of the MEL-FRY® Mark and MEL-FRY® Trade Dress.

## FIRST CLAIM FOR RELIEF

### (FEDERAL TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114)

20.   Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

21.   Defendant's actions, as alleged herein, are likely to cause confusion or to cause mistake or to deceive and constitute trademark infringement in violation of 15 U.S.C. § 1114.

## SECOND CLAIM FOR RELIEF

### (TRADEMARK AND TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a))

22.   Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

23.   Defendant's actions, as alleged herein, are likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiff, in violation of 15 U.S.C. § 1125(a).

## THIRD CLAIM FOR RELIEF

### (DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c))

24.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

25.    Defendant's actions, as alleged herein, reduce the capacity of Ventura Foods' famous mark and trade dress to identify and distinguish Ventura Foods' goods and constitute dilution in violation of 15 U.S.C. § 1125(c).

## FOURTH CLAIM FOR RELIEF

### (TRADEMARK INFRINGEMENT IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW §360-k)

26.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

27.    Defendant's actions, as alleged herein, are likely to cause confusion or to cause mistake or to deceive, and constitute trademark and trade dress infringement in violation of New York General Business Law §360-k.

## FIFTH CLAIM FOR RELIEF

### (DILUTION IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW §360-l)

28.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

29.    Defendant's actions, as alleged herein, are likely to cause irreparable injury to Ventura Foods' business reputation and to dilute the distinctive quality of Ventura Foods' trademark in violation of New York General Business Law §360-l.

## SIXTH CLAIM FOR RELIEF

### (FALSE ADVERTISING IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW §350)

30.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

31.    Defendant's actions, as alleged herein, are likely to mislead consumers in a material respect and constitute false advertising in violation of New York General Business Law §350.

## SEVENTH CLAIM FOR RELIEF

### (DECEPTIVE PRACTICE IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349)

32.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

33.    Defendant's actions, as alleged herein, are misleading in a material respect and constitute a deceptive act or practice in the conduct of business, trade, or commerce or in the furnishing of any service in New York, in violation of New York General Business Law §349.

## EIGHTH CLAIM FOR RELIEF

### (USE OF NAME WITH INTENT TO DECEIVE OR MISLEAD IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 133)

34.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

35.    Defendant's actions, as alleged herein, are likely to deceive or mislead the public regarding the Defendant's identity, are likely to deceive or mislead the public into believing that there is some connection between Defendant and Ventura Foods, and constitute a violation of New York General Business Law § 133.

## NINTH CLAIM FOR RELIEF

## (UNFAIR COMPETITION IN VIOLATION OF COMMON LAW)

36.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

37.    Defendant's actions, as alleged herein, constitute trademark and trade dress infringement and unfair competition in violation of New York common law.

## TENTH CLAIM FOR RELIEF

## (INTERFERENCE WITH BUSINESS IN VIOLATION OF COMMON LAW)

38.    Ventura Foods repeats and realleges the allegations contained in Paragraphs 1 through 19, as if fully set forth herein.

39.    Defendant's actions, as alleged herein, constitute tortious interference with Ventura Foods' business in violation of New York common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff VENTURA FOODS, LLC prays that this Court enter a Final Judgment against Defendant NICE BLENDS CORPORATION, as follows:

(1)    Pursuant to 15 U.S.C. § 1116 and New York law, that Defendant, Defendant's affiliates, and its/their respective officers, agents, relatives, servants, employees, attorneys, and all others in concert and/or participation with them, be preliminarily and permanently enjoined from:

A.    Using MY-FRY, the MEL-FRY® Mark, or any colorable imitation of the MEL-FRY® Mark, in or as any trademark or name, domain name, or in any other manner;

B.  Using the current MY-FRY trade dress, the MEL-FRY® Trade Dress, or any colorable imitation of the MEL-FRY® Trade Dress, in connection with any goods or services;

C.  Diluting the distinctive quality of the MEL-FRY® Mark and MEL-FRY® Trade Dress or otherwise injuring or interfering with Plaintiff's business, business reputation, or goodwill; and

D.  Engaging in unfair competitive practices and acts that are likely to cause confusion between Plaintiff and Defendant and/or their respective products;

(2)  Pursuant to 15 U.S.C. § 1117 and New York law, that Defendant account for, and pay to Plaintiff, all of Defendant's profits, gains, and advantages that are realized from Defendant's illegal conduct;

(3)  Pursuant to 15 U.S.C. § 1117 and New York law, that Plaintiff be awarded all damages sustained by it which are attributable to Defendant's infringement of the MEL-FRY® Mark and MEL-FRY® Trade Dress, and for the torts committed against Plaintiff, and that said damages be trebled;

(4)  Pursuant to 15 U.S.C. § 1117 and New York law, that Plaintiff be awarded its costs of suit, expenses, and reasonable attorneys' fees; and

(5)  That Plaintiff have such other and further relief as the Court deems equitable and just in the circumstances.

Plaintiff demands a jury trial for all claims that are properly triable to a jury.

Dated:  June 14, 2001

PILLSBURY WINTHROP LLP

By:

Susan J. Kohlmann (SK-1855)
One Battery Park Plaza
New York, NY 10004-1490
Telephone: (212) 858-1000
Facsimile:  (212) 858-1500

Attorneys for Plaintiff
VENTURA FOODS, LLC

**EXHIBIT A**



**EXHIBIT B**



# MY-FRY

100% PURE VEGETABLE OIL

A Product Of
Nice Blends Corp West Hempstead, NY   11552

www.NiceBlends.com



net contents 35 LBS @ lb

**EXHIBIT H**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
VENTURA FOODS, LLC,                    :

                    Plaintiff,         :

              v.                       :          02 Civ. 4519 (BSJ)

                                       :               **ORDER**
NICE BLENDS CORPORATION,               :

                    Defendant.         :
-------------------------------------x

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE


        In this action, Plaintiff Ventura Foods, LLC moved for a

preliminary injunction against Defendant Nice Blends Corporation,

alleging trademark and trade dress infringement in violation of

15 U.S.C. § 1125(a).  Shortly after the preliminary injunction

motion was filed, the parties entered a settlement agreement and

consent decree.  Plaintiff now brings this motion for attorneys'

fees and costs.  For the reasons to follow, this Court grants

Plaintiff's motion for attorneys' fees.

        Section 35(a) of the Lanham Act provides that "[t]he court

in exceptional cases may award reasonable attorney fees to the

prevailing party." 15 U.S.C. § 1117(a).  The Second Circuit has

defined "exceptional cases" to include instances of fraud, bad

faith, or willful infringement.  <u>Patsy's Brand, Inc. v. I.O.B.</u>

<u>Realty, Inc.</u>, 317 F.3d 209, 221 (2d Cir. 2003); <u>Bambu Sales, Inc.</u>

                                  1

v. Ozak Trading Inc., 58 F. 3d 849, 854 (2d Cir. 1995); Quaker
State Oil Refining Corp. v. Kooltone, Inc., 649 F.2d 94, 95 (2d
Cir. 1981). As Defendant concedes, the Court may grant
attorneys' fees if Defendant "adopted its mark with the intention
of capitalizing on plaintiff's reputation and goodwill and any
confusion between his and the senior user's product." New York
State Society of Certified Public Accountants v. Eric Loius
Assocs., 79 F. Supp. 2d 331, 347 (S.D.N.Y. 1999). The decision
of whether to award such fees lies within the broad discretion of
the Court. Conopco, Inc. v. Campbell Soup Co., 95 F.3d 18, 194
(@d Cir. 1996).

Plaintiff produces and sells vegetable based liquid
shortening to restaurants and other food service providers with
the MEL-FRY trademark. Defendant also produces and sells
vegetable based liquid shortening, using the MY-FRY trademark.
Having reviewed the side by side pictures of Plaintiff's and
Defendant's products, this Court finds that Defendant willfully
infringed Plaintiff's trademark and trade dress so as to warrant
an award of attorneys' fees.

Both products are presented in nearly identical yellow,
rectangular, upright jugs with front and back labels. On
Defendant's labels, the MY-FRY mark appears in bold capital
letters nearly identical to Plaintiff's MEL-FRY mark. Both
Defendant's MY-FRY mark and Plaintiff's MEL-FRY mark appear on

2

the label above smaller, centered phrases in yellow lettering.
While Defendant asserts that two of Plaintiff's competitors also
use similar yellow containers, the labels and lettering on these
competitor's products are distinguishable from Plaintiff's
product and do not create confusion.  The same cannot be said for
Defendant's labels.  The substantial similarity between the
combination of Defendant's MY-FRY mark and trade dress and
Plaintiff's MEL-FRY mark and trade dress evidence Defendant's
intent to infringe.  See Fun-Damental Too, Ltd v. Gemmy
Industries Corp., 111 F.3d 993, 1004 (2d Cir. 1997).

Moreover, the original MY-FRY mark and label, registered to
another corporation in August of 1992, bears no resemblance to
Plaintiff's mark or trade dress.  That registration was cancelled
in 1999 for failure to file a declaration of use.  When Defendant
adopted the older MY-FRY mark, it completely changed the trade
dress.  Although Defendant asserts that it adopted its trade
dress for legitimate business reasons wholly unrelated to
Plaintiff's product, Defendant's new trade dress bears no
resemblance to the original label and, instead, imitates
Plaintiff's trade dress.  This supports a finding that Defendant
intentionally copied Plaintiff's mark and trade dress in bad
faith to capitalize on Plaintiff's reputation and goodwill.

Defendant "must create a reputation of its own and not trade
on the goodwill of another product already established at

3

se

considerable cost and risk." See Harold F. Ritchie, Inc. v.
Chesebrough-Pond's, Inc., 281 F.2d 755, 758 (2d Cir. 1960).
The combined similarity of the word mark and the trade dress is
so strong, it can only have occurred through deliberate copying
to capitalize on Plaintiff's goodwill and reputation.
Accordingly, the Court grants attorneys' fees to Plaintiff.

The Amount of Attorneys' Fees

     Plaintiff seeks attorneys' fees in the amount of
$151,403.56, as well as additional fees incurred for the
preparation and filing of this motion for attorneys' fees.  In
determining a reasonable fee, the Court utilizes the lodestar
analysis. See e.g., Luciano v. Olsten Corp., 109 F.3d 111, 115
(2d Cir. 1997).  Pursuant to this analysis, the Court calculates
fees on the basis of "the number of hours reasonably expended
multiplied by a reasonable hourly rate." Id. (citing Blanchard v.
Bergeron, 489 U.S. 87, 94 (1989)).  When calculating the lodestar
figure, the Court should exclude "excessive, redundant, or
otherwise unnecessary hours, as well as hours dedicated to
severable, unsuccessful claims." Quarantino v. Tiffany & Co., 166
F.3d 422, 424-25 (2d Cir. 1999).  Ultimately, "a reasonable fee
is properly committed to the discretion of the district court."
Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir.
2000).

     Plaintiff seeks $28,848.00 in fees and costs related to

4

proceedings before the Trademark Trial and Appeal Board ("TTAB")
of the United States Patent & Trademark Office because Defendant
allegedly ignored several cease and desist letters.  Because the
TTAB proceedings are not part of this action, the Court excludes
the fees and costs that Plaintiff incurred as part of the TTAB
proceeding, including an additional twelve billing entries for
the months of April, May and June 2002, totaling $13,762.50, that
refer to the TTAB proceeding.

*Reasonable Hourly Rate*

   A reasonable hourly rate is one that is "in line with those
prevailing in the community for similar services by lawyers of
reasonable comparable skill, experience and reputation."
Knoeffler v. Town of Mamakating, 126 F. Supp. 2d 305, 310
(S.D.N.Y. 2000).  The prevailing community is the district in
which the court sits.  Cruz v. Local Union No. 3 of the Int'l
Brothers of Electrical Workers, 34 F.3d 1148, 1159 (2d Cir.
1994).

   Plaintiff seeks hourly rates that range from $210.00 to
$535.00 per hour for associates and partners and from $95.00 to
$175.00 for paralegals.  While Plaintiff has not provided any
information on the attorneys' work experience, "the discretion of
the district court is not limited to the 'hourly data submitted
into evidence' and may include 'the judge's own knowledge of
private firm hourly rates in the community.'"  Vishipco Line v.

5

Charles Schwab & Co., No. 02 Civ. 7823, 2003 WL 1936142, *2 (S.D.N.Y. April 23, 2002) (quoting Miele v. New York State Teamsters Conference Pension & Retirement, 831 F.2d 407, 409 (2d Cir. 1987)). This Court finds that Plaintiff's rates for the associates and partners of Pillsbury Winthrop LLP are reasonable in the Southern District of New York. See Yurman Designs, Inc. v PAJ, Inc., 125 F. Supp. 2d 54. 57-58 (S.D.N.Y. 2000) (approving of an hourly rate of $520.69 for a partners and $278.50 for associates).

This Court also finds, however, the paralegals' hourly rates of $95.00 to $175.00 to be unreasonable. Because Plaintiff has failed to provide any information concerning the level of experience of these paralegals, this Court reduces the paralegals' hourly rate to $75.00. See Vishipco Line, 2003 WL 660836, at *6 (noting that paralegals are typically billed at $75 per hour, unless they have significant experience).

*Number of Hours*

Having reviewed the billing records, the Court finds that many of the charges may be duplicative or excessive. For instance, there are at least twelve entries among three attorneys that relate to revising a declaration. Seven of these entries simply state the task as "revise Declaration," two entries state "draft and revise Ventura declaration," two entries state "review Ventura declaration" and one entry states "revise Kohlmann

6

Declaration." Because the entries for each attorney list numerous tasks and because some of the entries are vague, the Court cannot determine the extent that charges are duplicative or excessive.

Moreover, the Court finds that this brief action was not so complex as to warrant the amount of hours billed and the number of attorneys assigned to it. Accordingly, the Court reduces the total charged by 30 percent. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) (percentage cuts are a "practical means of trimming fat from a fee application" for excessive or duplicative hours); Ace Limited v. Cigna Corp., No. 00 Civ. 9423, 2001 WL 1286247 (Oct. 22, 2001) (50 percent reduction for duplicative and excessive hours and for failure to provide support for attorneys' fees); Rainola v. Bratton, No. 96 Civ. 4482, 2003 WL 1907865, *5 (April 21, 2003) (20% reduction in time claimed). The Court awards Plaintiff's attorneys' fees as follows:

**Fees Incurred for Legal Proceedings:**

| | |
|---|---|
| Attorneys: | $85,145.25 |
| Paralegals: | $    900.00 |
| Costs: | $ 3,660.85 |
| Total: | $89,706.10 |
| Reduction for entries relating to TTAB: | -$13,762.50 |
| **Total:** | $75,943.60 |

7

Fees Incurred for Settlement:

Attorneys:                          $29,806.75
Paralegals:                         $    37.50
Costs:                              $ 1,956.01
Total:                              $31,800.26


TOTAL FEES AND COSTS:                        $107,743.86
Reduction by 30% for vague,
duplicative and excessive charges:           $75,420.70


Conclusion

     Plaintiff's motion for attorneys' fees and costs in the

amount of $75,420.70 to cover expenditures through the settlement

of this action is granted.  The Court denies Plaintiff's motion

for attorneys' fees and costs expended in making this motion.

The Clerk of the Court is directed to close this case.

SO ORDERED:


                              _____
                              BARBARA S. JONES
                              UNITED STATES DISTRICT JUDGE


Dated:      New York, New York
            May 13, 2003


8

**EXHIBIT I**



Pillsbury
Winthrop
Shaw
Pittman LLP

50 Fremont Street
San Francisco, CA 94105
Tel 415.983.1000
Fax 415.983.1200

MAILING ADDRESS
P. O. Box 7880
San Francisco, CA 94120
www.pillsburylaw.com

May 22, 2007

Michelle R. Watts
Phone: 415.983.1649
michelle.watts@pillsburylaw.com

<u>VIA E-MAIL AND CERTIFIED MAIL</u>

Frederick W. Meyers
Ladas & Parry LLP
224 S. Michigan Ave. Ste. 1600
Chicago, IL 60604-2508

Re:     Letter Demanding Cessation of Use of MEGA-FRY and Label by
Supreme Oil Company

Dear Mr. Meyers:

We write on behalf of our client, Ventura Foods, LLC ("Ventura Foods"). Ventura
Foods is a leading manufacturer of food products, as well as provider of services in the
foodservice industry. Ventura Foods owns the trademark MEL-FRY (US Reg. No.
0774679) (Reg. Date: August 4, 1964) for "vegetable shortening marketed in bulk
quantities" in class 29. Ventura Foods has been using the trademark MEL-FRY for many
years on a distinctive label shown below as follows:



May 22, 2007
Page 2

Ventura's MEL-FRY mark and labeling are very well known in the industry, and are symbols of Ventura's valuable goodwill in the product.

It has been brought to Ventura Foods' attention that your client, Supreme Oil Company, has been using and has applied to register the following product label as a trademark in the US:



Ventura Foods' MEL-FRY brand and Supreme Oil Company's MEGA-FRY appear side-by-side below:



May 22, 2007
Page 3

As evident from the above, Supreme Oil Company's use of MEGA-FRY infringes Ventura Foods' trademark and trade dress rights. The word marks both begin with ME- and end with –FRY, and are likely to be confused when applied to competing products. The overall commercial impression of the trade dress is also likely to confuse. The yellow container upon which Supreme Oil Company places the MEGA-FRY label is very similar in size and shape to the yellow container Ventura Foods uses for its MEL-FRY product. Supreme Oil Company uses a dark-colored square-shaped label, the same size and in the same location on the yellow container, for MEGA-FRY as Ventura Foods does on its MEL-FRY product. The Ventura MEL-FRY word logo is horizontally bisected with shading. The MEGA-FRY logo also has shading across the letters. Furthermore, Supreme Oil Company's dark-colored square label has a depiction of fries in a basket, just as Ventura Foods does on its MEL-FRY label. Finally, each dark-colored square label has a similar slogan. Supreme Oil Company's label states "[t]he longest lasting frying oil. Guaranteed." Ventura Foods' label states "[t]he long-lasting liquid frying shortening."

Our client has also discovered infringing use of "MELFRY" and "MEGA FRY" on the enclosed invoice, which states "NEWMELFRY (MEGA FRY)" on the second product description line from the bottom. This use not only infringes, but also shows intent to infringe, Ventura Foods' MEL-FRY. A consumer can easily be confused by this use, thinking that MEGA-FRY is a new and improved formulation of MEL-FRY that is produced by Ventura Foods.

Ventura Foods has also noticed that Supreme Oil Company appears to use MEGA-FRY followed by an ® (see close-up of MEGA-FRY below):



However, Ventura Foods is unable to find record of a registration for MEGA-FRY owned by Supreme Oil Company in the US trademark databases. It is only able to find record of a pending trademark application. Use of ® in connection with a trademark that is not registered either in the US or in one of certain specified foreign countries listed in section 906.01 of the Trademark Manual of Examining Procedure violates US law.

May 22, 2007
Page 4


Ventura Foods sets forth the following demands:
(1) That Supreme Oil Company immediately stop using MEGA-FRY alone or in connection with trade dress that is confusingly similar to Ventura Foods' MEL-FRY brand;
(2) That Supreme Oil Company abandon its pending trademark application for the MEGA-FRY label (US Serial No. 78/827774).
(3) That Supreme Oil Company provide comparative product tests or other proof that it is the "longest latest frying oil." If Supreme Oil Company is unable to provide such proof, then Ventura Foods also demands that it immediately cease making the claim for any liquid shortening.
(4) That Supreme Oil Company immediately stop identifying any of its products as a "new Mel-Fry" and instruct its distributors not to identify its products as such.

Should Supreme Oil Company refuse to comply with these demands, as well as provide written confirmation that it is doing so, Ventura Foods reserves its right to take further legal action to protect its trademark and trade dress rights. Ventura Foods also reserves its right to pursue a false advertising claim.

Please let us know Supreme Oil Company's response to Ventura Foods' demands before **June 5, 2007**.

Sincerely yours,

*Michelle R. Watts*

Michelle R. Watts


Enclosure



*** INVOICE ***

| | | | DESCRIPTION | | | | EXTENSION |
|---|---|---|---|---|---|---|---|
| 1 | CBCS LAMB WEST | APPLE TURNOVERS, IND. | 1/120CT | 26.95 | 10.00 | | 26.95 |
| 1 | CBCS | TWINE (FOR PIZZA) | 1/EA. | 8.95 | .00 | | 8.65 |
| 1 | CBCS | PIZZA BOXES 16 | 1/50CNT | 17.95 | .00 | | 17.95 |
| 1 | BCLB MILLFLOW | GARLIC POWDER A | 12/18OZ | 12.95 | 1.12 | | 12.95 |
| 3 | CBCS HEINZ | | /000CT | 19.50 | 67.50 | | 58.50 |
| 1 | CBCS SCOTT | | /0000C | 22.95 | .00 | | 22.95 |
| 2 | CBCS TOWER | | /0CNT | 33.95 | .00 | | 67.90 |
| 1 | CBCS WONDER'S | | LBS. | 27.95 | 12.00 | | 27.95 |
| 1 | CBCS PIERCE | | /0LBS | 22.95 | 10.00 | | 22.95 |
| 1 | CBCS CHIX | | /0 LBS | 16.95 | 10.00 | | 16.95 |
| 1 | CBCS OASIS | | /00CT | 5.95 | .00 | | 5.95 |
| 1 | CBCS PROMISE | | /6 GM | 15.95 | 18.00 | | 15.95 |
| 1 | CBCS | | 5 KG | 6.95 | .00 | | 6.95 |
| 1 | CBCS KRONOS | | /1.25 | 22.95 | 11.50 | | 22.95 |
| 1 | CBCS | | /0CNT | 7.95 | .00 | | 7.95 |
| 1 | CBCS OASIS | | /0CT. | 5.95 | 4.50 | | 5.95 |
| 2 | CBCS PIERCE | | 1/25LBS | 62.95 | 50.00 | | 125.90 |
| 1 | CBCS MOORE | 0 | 8/2LBBAG | 15.95 | 16.00 | | 15.95 |
| 3 | CBCS GENRLMILLS | ALL PUMPS A LOOK | 1/50LBS. | 13.50 | 150.00 | | 40.50 |
| 5 | CBCS BONANZA | FRENCH FRIES BONANZA | 6/6 | 15.95 | .00 | | 95.70 |
| 2 | CBCS | NEWMELFRY (MEGA FRY) | 3/10QT | 32.95 | .00 | | 65.90 |
| 1 | CBCS | STRAWS | 24/500 | 33.95 | .00 | | 33.95 |

S: 33    TOTAL PIECES: 1
         TOTAL OUTSTANDING    7,180.25

| PKR | DRV | TRK | STOP |
|---|---|---|---|
| 01 | 01 | 01 | 010 |

| | | SUB TOTAL | |
|---|---|---|---|
| | | TAX | |
| | | AMOUNT DUE | |

Y THIS AMOUNT :    729.22          CUSTOMER COPY

**EXHIBIT J**

# LADAS & PARRY LLP
### INTELLECTUAL PROPERTY LAW

Frederick W. Meyers  fredm@ladas.net

LAW OFFICES ▪ LADAS & PARRY LLP ▪ 224 South Michigan Avenue ▪ Suite 1600 ▪ Chicago, Illinois 60604
P 312.427.1300 ext. 212 ▪ F 312.427.6663 ▪ P 312.427.6668 ▪ www.ladas.com

June 28, 2007

Michelle R. Watts
Pillsbury, Winthrop, Shaw, Pittman LLP
50 Fremont Street
San Francisco, CA 94105
Tel: 415 983 1000
Fax: 415 983 1200
Michelle.watts@pillsburylaw.com

Re:    Demand of Cessation of Use of MEGA-FRY and Label by Supreme Oil
Company

Dear Ms. Watts:

In response to your letter of May 22, 2007, our client replies to your demands as follows:

1) Supreme Oil Company will continue to use MEGA-FRY alone and in connection
   with its packaging, neither of which is confusingly similar to Ventura Foods'
   product.
2) Supreme Oil Company will not abandon its pending trademark application for the
   MEGA-FRY label.
3) Supreme Oil will continue using its slogan "longest lasting frying oil"
4) Supreme Oil will not call its product NEWMELFRY, however, Supreme Oil has
   never referred to its product as such.

Supreme Oil maintains that the respective labels are completely distinguishable by virtue
of placement of the wording and elements. The wording on each label is positioned
differently. MEL-FRY appears in the lower half of the label, below the basket, while
MEGA-FRY is placed in the very top region of the label, above the visible portion of the
basket.

The word marks themselves are completely different. First, they appear in different fonts
– MEGA-FRY utilizes a sharp, block-like font while MEL-FRY is cast in a font with
rounded edges. Each letter in MEGA-FRY is outlined in magenta, while the body of
each letter displays shading alternating between a cream-to-gold gradient. By contrast,
the MEL-FRY letters appear sans outlining, and display a stark shift from yellow on the
top half of each letter to orange on the bottom half.

The overall meanings of each mark are also distinct. "Mega" in MEGA-FRY is
synonymous to "large," while "mel" in MEL-FRY has no established meaning to our
knowledge. "Fry," on the other hand, suggests an element of the product. As "fry" is so

26 West 61st Street, New York, NY 10023 ▪ 5670 Wilshire Boulevard, Los Angeles, CA 90036
52-54 High Holborn, London WC1V 6RR, England ▪ Dachauerstrasse 37, 80335 Munich, Germany

closely related to the function of the product, it may not serve as a distinguishing factor for either mark. The slogans below each mark also serve to distinguish the respective marks. MEL-FRY identifies itself as "liquid frying shortening" while MEGA-FRY identifies itself as "frying oil." When viewed in the aggregate, the differences in each word mark are substantial and therefore mitigate against a likelihood of confusion.

The non-verbal elements displayed on the respective products are different. The baskets are also presented differently. MEL-FRY's basket is small, yellow and completely visible, while only one partial wall of MEGA-FRY's basket is visible so that it is difficult to confirm whether the structure actually is a basket. MEGA-FRY's basket is also blue. The contents of each basket are also different. The contents in MEL-FRY's basket are french fries, a fried shrimp, an onion ring, and a fried drumstick while MEGA-FRY's basket contains french fries and what looks like portions of pork chops. Moreover, MEL-FRY's basket contents appear as if they are being tossed as many contents seem to be falling into the basket. By contrast, MEGA-FRY's basket contents are fully within the basket. Finally, the packaging is a functional design in wide use in many industries as is the color which is indicative of the most common color for cooking oil. This color is so obvious that it may not serve as a determining factor in the comparison process.

When you first transmitted the original demand letter and invoice via email, you immediately attempted to recall it. When you resent your letter and invoice, the majority of the content, save for the word NEWMELFRY was covered. While we were able to open and review the original, unredacted invoice, the fact that you engaged in such behavior could be viewed as deliberately misleading. We sincerely hope this is not your intention. Nevertheless, in spite of the fact that you later misrepresented the invoice as "an infringing use," it was not sent by or to Supreme Oil Company and Supreme Oil had no knowledge or control over the description Wonder Foods utilized to identify said product. The invoice must therefore be disregarded as an isolated third-party act over which Supreme Oil had no control.

Finally, it is significant to note that the USPTO did not raise a likelihood of confusion refusal against MEGA-FRY. By USPTO standards and the standards set forth by the United States Trademark Act, the marks are not confusingly similar. Thus, Supreme Oil will not be complying with Ventura Foods' demands and any further legal action taken on behalf of your client will be met with a vigorous defense.

Yours sincerely,

Frederick W. Meyers
Ladas & Parry LLP